# 24-778-ᴄʀ(L)
## 24-1285-ᴄʀ(ᴄᴏɴ), 24-1317-ᴄʀ(ᴄᴏɴ)

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

FOR THE SECOND CIRCUIT

———— ≫ ≪ ————

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ALLISON MACK, CLARE BRONFMAN, KATHY RUSSELL,
LAUREN SALZMAN, NANCY SALZMAN, AKA PERFECT,

*Defendants,*

KEITH RANIERE, AKA VANGUARD,

*Defendant-Appellant.*

————————

*On Appeal from the United States District Court
for the Eastern District of New York*

## REPLY BRIEF FOR DEFENDANT-APPELLANT

DEBORAH J. BLUM, ESQ.
*Attorney for Defendant-Appellant*
225 Broadway, Suite 715
New York, New York 10007
646-535-2586


PHP (212) 719-0990
appeals@phpny.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................v

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF FACTS ...................................................................3

   A.  NEW ASSERTIONS BY THE GOVT. IN ITS OPPOSITION .................3

   B.  CLARIFICATIONS OF GOVT. ASSERTIONS IN ITS
       OPPOSITION ........................................................................4

       Pre-Trial ...........................................................................4

       Trial Evidence ..................................................................4

       The Loveall Report & CART Protocol .....................................5

       Mr. Raniere's Rule 33 Arguments ..........................................6

   C.  FACTS FOR REQUESTED JUDICIAL NOTICE ....................................7

       Pre-CART Evidence Handling.................................................7

       CART Evidence Handling ....................................................8

       Loveall Report...................................................................9

ARGUMENTS ...................................................................................9

   I.    WITHOUT THE CAMERA OR HARD DRIVE, THE
       CHILD PORNOGRAPHY AND SEXUAL
       EXPLOITATION ACTS COLLAPSE – REGARDLESS
       OF ANY OTHER TRIAL EVIDENCE ...................................9

       A.   Legal Standard ................................................................9

           Acts 2 and 3 – Sexual Exploitation of a Child................................10

i

Act 4 – Possession of Child Pornography......................................10

B.    Analysis ................................................................................11

II.    JUDICIAL ESTOPPEL BARS THE GOVT. FROM
       DOWNPLAYING THESE ACTS AFTER ARGUING
       THEY WERE CENTRAL TO RICO......................................13

A.    Legal Standard .................................................................13

B.    Analysis ............................................................................13

III.   THE CHILD PORNOGRAPHY EVIDENCE TAINTED
       THE ENTIRE TRIAL BEYOND REPAIR ...........................15

A.    Legal Standard .................................................................15

B.    Analysis ............................................................................15

IV.    THE DISTRICT COURT ABUSED ITS DISCRETION IN
       RELYING ON THE LOVEALL REPORT AND CAMILA
       DECLARATION TO IMPROPERLY REJECT MR.
       RANIERE'S CLAIMS OF EVIDENCE FALSIFICATION ...............16

A.    Legal Standard .................................................................16

B.    Analysis ............................................................................16

V.     THE DISTRICT COURT ABUSED ITS DISCRETION IN
       DENYING THE RULE 33......................................................18

A.    Legal Standard .................................................................18

Materiality ..............................................................................19

Suppression ...........................................................................19

B.     Analysis ......................................................20

    (1)  The District Court's Failure to Identify Suppressed Evidence and Assess Materiality Requires Remand, If Not Reversal ......................................20

    (2)  The Govt. Suppressed the Second Copy of the Camera's Memory Card ....................................20

    (3)  The Govt. Suppressed the Secret FBI Photo Tech Operation & the Prior Unknown Actor ...................22

    (4)  The Govt. Suppressed Evidence of Its Own Complicity in Falsification .....................................23

    (5)  The Govt. Suppressed that the "Accidental Discovery" was Staged .........................................24

    (6)  The Suppressed Evidence is Material under *Brady* .................25

    (7)  The Evidence Also Warrants Relief Under Rule 33 as "Newly Discovered" ...................................28

VI.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING POST-CONVICTION MOTION-TO-COMPEL ....................................................28

VII.  SYSTEMATIC GOVT. MALFEASANCE CAUSED STRUCTURAL ERROR REQUIRING REVERSAL OF MR. RANIERE'S CONVICTIONS ....................................29

    A.     Applicable Law ...............................................29

    B.     Analysis ..........................................................29

VIII. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING AN EVIDENTIARY HEARING ON THE RULE 33 ........................................................31

    Applicable Law ......................................................31

    Analysis ..................................................................31

IX.   THE DISTRICT COURT ABUSED ITS DISCRETION IN
DENYING RECUSAL ................................................................. 32

    A.   Applicable Law ................................................................. 32

    B.   Analysis ............................................................................. 32

    Rebuttals to the Govt.'s Assertions in Opposition to
Raniere's Recusal Motion ........................................................ 33

CONCLUSION ........................................................................................ 34

CERTIFICATE OF COMPLIANCE ...................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrew v. White,*
220 L.Ed. 2d 340 (2025) .................................................................15, 16

*Ariz. v. Fulminante,*
499 U.S. 279 (1991) .........................................................................29

*Banks v. Dretke,*
540 U.S. 668 (2004) ...........................................................20, 22, 23

*Dalli v. United States,*
F.2d 758 (2d Cir. 1974) ....................................................................16

*Drake v. Portuondo,*
553 F.3d 230 (2d Cir. 2009) .............................................................28

*Kyles v. Whitley,*
514 U.S. 419 (1995) ....................................................................19, 28

*McCrory v. Alabama,*
144 S. Ct. 2483 (2024) ......................................................................25

*Napue v. Illinois,*
360 U.S. 264 (1959) ..........................................................................28

*Payne v. Tennessee,*
501 U.S. 808 (1991) ..........................................................................15

*Robertson v. Seidman & Seidman,*
609 F.2d 583 (2d Cir. 1979) .............................................................24

*Stirone v. United States,*
361 U.S. 212 (1960) ..........................................................................26

*U.S. v. Raniere,*
18-cr-204 ......................................................................................1, 30

*United States v. Awadallah*,
   436 F.3d 125 (2d Cir. 2006) ................................................................32

*United States v. Badalamente*,
   507 F.2d 12 (2d Cir. 1974) ..................................................................19

*United States v. Borello*,
   766 F.2d 46 (2d Cir. 1985) ..................................................................15

*United States v. Boyd,*
   131 F.3d 951 (11th Cir. 1997) ............................................................17

*United States v. Brown*,
   843 F.3d 74 (2d Cir. 2016) ...........................................................15, 16

*United States v. Cacace*,
   796 F.3d 176 (2d Cir. 2015) ................................................................19

*United States v. Coppa (In re United States)*,
   267 F.3d 132 (2d Cir. 2011) .........................................................18, 21

*United States v. Forbes*,
   790 F.3d 403 (2d Cir. 2015) ................................................................28

*United States v. Franzese*,
   525 F.2d 27 (2d Cir. 1975) ...........................................................16, 17

*United States v. Gershman*,
   31 F.4th 80 (2d Cir. 2022) ..............................................................3, 31

*United States v. Harvey*,
   991 F.2d 981 (2d Cir. 1993) .........................................................15, 16

*United States v. Hernandez*,
   604 F.3d 48 (2d Cir. 2010) ..................................................................32

*United States v. Johnson*,
   850 F.3d 515 (2d Cir. 2017) ................................................................32

*United States v. Nosov*,
   221 F. Supp. 2d 445 (S.D.N.Y. Sept. 17, 2002) ...........................15, 16

*United States v. Payne,*
    63 F.3d 1200 (2d Cir. 1995) ........................................................18, 19

*United States v. Petrillo,*
    821 F.2d 85 (2d Cir. 1987) ..........................................................19, 25

*United States v. Robin,*
    553 F.2d 8 (2d Cir. 1977) .............................................................32, 33

*United States v. Rowland,*
    826 F.3d 100 ....................................................................................19, 20

*United States v. Salerno,*
    290 F.2d 105 (2d Cir. 1961) .................................................................16

*United States v. Swartz Fam. Trust,*
    67 F.4th 505 (2d Cir. 2023) ..................................................................13

*United States v. Ugbomah,*
    2023 U.S. Dist. LEXIS 17859* (E.D.N.Y. Feb. 2, 2023) ...................13

*United States v. Wong,*
    78 F.3d 73 (2d Cir. 1996) .............................................................19, 26

*United States v. Zackson,*
    6 F.3d 911 (2d Cir. 1993) ......................................................................20

*Wong Sun v. United States,*
    371 U.S. 471 (1963) ..............................................................................27

## Statutes

28 U.S.C. § 1746 ......................................................................................2, 9

**Rules**

Federal Rules of Appellate Procedure § 12.1(b) ......................................34

Federal Rules of Criminal Procedure § 33 ............6, 7, 18, 20, 24, 28, 31, 32, 33, 34

Federal Rules of Evidence § 201(b) ......................................................34

Federal Rules of Evidence § 201(c)(2)..................................................34

**Other Authorities**

FBI Digital Evidence Policy Guide § 3.3.9.1.1.2 ................................8, 23

FBI Digital Evidence Policy Guide § 3.3.11.2 ...................................6, 9

FBI Digital Evidence Policy Guide § 3.3.4.5 ........................................7

HBO's *The Vow*..................................................................24, 27

## PRELIMINARY STATEMENT

The government claims "[n]one of the evidence Raniere cites was newly discovered or suppressed, and there was no *Brady* violation." (GBr.[1] at 39). This is patently false. To date, the government continues to disclose new evidence. **5½ years post-trial**, in its opposition, it now reveals that before the unauthorized FBI photo tech – concealed for 4+ years – accessed the **unpreserved** camera memory card **before a forensic image was made**, **another unauthorized actor had already done so.** This is prohibited by FBI protocol.

The government's cited case law confirms the district court could not rely on the untested, post-trial declarations from FBI Senior Computer Scientist David Loveall II and Camila, who did not testify at trial, to decide whether Mr. Raniere's claim of evidence falsification is true or false.

The child pornography and sexual exploitation acts hinge on the hard drive and camera. If excluded, the other so-called "overwhelming" evidence is irrelevant. The government called these predicate acts "the heart" of its racketeering case. It cannot now claim they can be isolated without affecting the

---

[1] **References:** "A" and "SPA" refer to the appendix and special appendix in Raniere's opening brief. "DE" refers to district court docket entries (No. 18-CR-204). "T" is the trial transcript. "GX" and "DX" are government and defense trial exhibits. "RBr." and "GBr." refer to Raniere's brief and the government's opposition.

1

conviction. Also, the falsified evidence is too inflammatory for its exclusion to be deemed harmless *post hoc*.

The government makes over a dozen critical misrepresentations, including a fundamental rewrite of its case – quietly shifting the number of alleged illicit photos from "18 or so" to "at least nine" and the alleged dates of illicit conduct from two to one. This underscores that this Court must not repeat the district court's error of rubber stamping the government's assertions.

Denying Mr. Raniere's consolidated appeal would permit:

- Convictions to be upheld on untested post-trial declarations from witnesses who did not testify at trial

- Crediting a scientific forensic examiner's report devoid of scientific proof, based on withheld, newly discovered evidence, and does not comport to 28 U.S.C. §1746

- Intentional, unauthorized government access to unpreserved key digital evidence

- Deliberate concealment of unauthorized access from the chain of custody

- Secret creation and use of prohibited forensic evidence by the government

- Knowing false testimony from government agents about evidence

None of these are tolerable, from a due process standpoint. Certainly, taken together, they demand nothing less than reversal or dismissal. At a minimum, this Court must order an evidentiary hearing to resolve the numerous "disputed issues

2

of definite, specific, and nonconjectural material fact." *United States v. Gershman*, 31 F.4th 80, 93 (2d Cir. 2022).

## STATEMENT OF FACTS[2]

### A. NEW ASSERTIONS BY THE GOVT. IN ITS OPPOSITION

1.     The government never acknowledged in the district court that a second forensic copy of the memory card existed. In its opposition, it first explicitly acknowledges its existence:

> "The Canon Camera was forensically imaged a second time after it became clear that … Flatley … would be unavailable for trial. (T:4986-87)" (GBr. at 40).

However, T:4986-87 does not state that the camera was forensically imaged a second time, only that FBI Senior Forensic Examiner Brian Booth "creat[ed] another **report** instead of Stephen Flatley." (T:4986-87) (emphasis added).

2.     The government now discloses that before the FBI photo technician accessed the unpreserved memory card, an unknown individual had already reviewed it. According to the government, this person saw that the card contained "primarily nude photographs" of adults and then determined that "the metadata associated with the photographs had [no] evidentiary value." (GBr. at 7). Only after this review did FBI agents "direct[] [the FBI] photograph technician" to

---

[2] The numbered facts in this section will be referred to as "Fact #" followed by the number.

3

access the memory card (*Id.*). Viewing the photos would have required removing the unpreserved memory card and connecting it to a computer, as Booth testified that the Canon camera was inoperable. (A1775 ¶ 19; T:4918).

B. <u>CLARIFICATIONS OF GOVT. ASSERTIONS IN ITS OPPOSITION</u>

<u>Pre-Trial</u>

3.     The government cites pretrial statements from Mr. Raniere regarding trial readiness.  (*Id.* at 10-12). However, it omits that the government had not yet disclosed its intent to use the camera's memory card as evidence supporting the predicate acts. (RBr. at 11).

<u>Trial Evidence</u>

4.     The government denies having "an ever-shifting number of alleged child pornography images," claiming instead there were "18" nude images of which only "at least nine" were illicit (GBr. at 15, n.6). Yet the record shows they asserted:

- Before trial: "Approximately 15 explicit images" across two dates (A226).

- At trial: "18 or so images of child pornography" spanning two dates (A391).

- Post-trial: "At least nine … were child pornography," now only tied to one folder and date (A1573).

5.     The government asserted, "[A]s reflected in the government's remarks in summation, the Canon Camera was not significant evidence 'linking'

4

Raniere to the photographs." (GBr. at 44). However, in summation the
prosecution explicitly used the Canon Camera to link the photos to Mr.
Raniere:

> "Lauren Salzman and Daniela both testified that the
> defendant took naked photographs of them in 2005.…. [Y]ou
> know, the images were taken from this camera, the Canon…
> It looks just like the camera that Lauren … and Daniela
> described the defendant taking pictures of them with."
> (T:5371-73).

6.     The government stated it "put forth no evidence at trial regarding how
the images were copied onto the [hard drive]." (GBr. 56, n.15). However, their
entire theory of possession was that the photos were backed up from a Dell
computer allegedly belonging to Mr. Raniere to link the hard drive to him.
(T:5368-69). The government elicited testimony from Daniela and SFE Booth to
support this theory. (T:2568-69, T:2571-72, T:4792-94).

7.     The government stated, "[t]he photographs themselves suggest that
Camila engaged in sexual activity with the photographer-Raniere." (GBr. at 43).
However, the photos of Camila depict nudity, not sexual activity (GBr. at 15); the
photographer is not visible or identifiable.

The Loveall Report & CART Protocol

8.     The government asserts that FBI Senior Computer Scientist David
Loveall II found the two forensic copies "of the **Canon Camera**" to be identical.
(GBr. at 41). (emphasis added). However, Loveall stated that the copy of the

**camera** and the copy of the **memory card** were "identical." (RBr. at 35-36).
**Neither the government nor Loveall has stated that the two forensic copies of the memory card are identical.**[3]

9.      The government asserts, "there is nothing improper about creating a duplicate forensic image of an electronic device." (GBr. at 41). The FBI Digital Evidence Policy Guide ("DEPG"), Section 3.3.11.2 prohibits doing so. (A1038, n.6)

Mr. Raniere's Rule 33 Arguments

10.      The government states: "Nowhere does Raniere claim that he is innocent." (GBr. at 57). Raniere has maintained his innocence before, during, and after trial. At sentencing, he stated his innocence, and the Court acknowledged: "[Raniere] maintains his innocence." (DE:1002 at 138, 149).

11.      The government claims Raniere did not challenge Loveall's report as "undated" or failing *Daubert* in district court (GBr. at 55, n.14). Yet, in his Rule 33 reply, Raniere did raise these issues. He argued that the missing date could "undermine its legal validity" and that "Loveall … did not provide [any] proof" – a *Daubert* issue. (A1824-25).

---

[3] The government calls it a "duplicate forensic image," but its identicality remains unproven.

12.    The government asserts Raniere's newly discovered evidence argument is "disingenuous" because "even prior to … sentencing" he mentioned a "tampered" drive in an April 6, 2020, call. (GBr. at 48, n.13). However, this call was post-trial. Rule 33 requires the evidence to be unknown before trial ended, not before sentencing.

13.    The government claims Raniere alleged the purported illicit photos on the hard drive were "'falsified' by law enforcement." (GBr. at 56, n.15). His brief states the hard drive and memory card were "extensively falsified" with government involvement – facilitating and/or concealing the falsification (RBr. 1, 47). He never claimed law enforcement did the forensic manipulation on the hard drive.

C.  FACTS FOR REQUESTED JUDICIAL NOTICE

Pre-CART Evidence Handling

**14.    Only CART personnel are authorized to review original digital evidence. *See* DEPG § 3.3.4.5. (A968-969).**

15.    The prosecution asserted at least three times to the district court that all seized devices were sent to CART "within days." (A88, A112-13, DE:143 at 1).

16.    Special Agent Christopher Mills testified that the camera, which contained the memory card, was reviewed only with CART's involvement:

7

Hajjar: What happens when you recover a piece of digital evidence like Government Exhibit 520 [the camera] and 524 [the camera card]?

Mills: … [i]f we want the evidence to be reviewed, we would submit a request to our CART team… who would review that evidence for us or assist[] us in reviewing the evidence with us.

Hajjar: And is that what happened in this case with Government Exhibit 520 [the camera]?

Mills: Yes. (T:4307).

17.    An unidentified FBI photo tech accessed the camera and its unpreserved memory card pre-CART on September 19, 2016, 177 days after seizure. *See* Chain of Custody (DX:945, A1233-35, A1579, n.6)

18.    FBI policy requires all transfers be documented in the chain of custody. DEPG Section § 3.3.9.1.1.2 (A983).

19.    The FBI photo technician is not listed in the chain of custody. (A122-35).

CART Evidence Handling

20.    On June 11, 2019 – three days before the end of six weeks of trial testimony – SFE Booth created and used a second forensic copy of the memory card for the analysis he testified about. (A1006-1007, A1038-1039).

21.    On June 12, 2019, SFE Booth testified that FBI policy allows only one forensic copy per device but did not disclose that he created a second copy:

"The computer … read[s] all the data off [the device] and save[s] it as an E01 file…. We put it [the device] back into the evidence vault

8

… [and] don't touch it after that. **The file [forensic copy] that we create from it is the only thing we use after that.**" (T:4783) (emphasis added).

22.   FBI protocol prohibits creating a second forensic copy of original digital evidence without approval from the Assistant Director ("AD") of the FBI Operational Technology Division ("OTD"). DEPG § 3.3.11.2, *supra*.

Loveall Report

23.   The Loveall Report states that "different settings" caused the differing files between the reports but does not cite any proof to support this claim. (A1621-22 ¶ 9).

24.   Loveall's rebuttals are found in ¶¶ 5-9 and 11-18 but he does not cite any proof to support them. (A1618-1625).

25.   The Loveall Report is a declaration under 28 U.S.C. § 1746. (A1618).

26.   The District Court accepted the Loveall Report as a valid, sworn declaration. (SPA29, A1683).

## ARGUMENTS

## I.   WITHOUT THE CAMERA OR HARD DRIVE, THE CHILD PORNOGRAPHY AND SEXUAL EXPLOITATION ACTS COLLAPSE – REGARDLESS OF ANY OTHER TRIAL EVIDENCE

### A. Legal Standard

9

The trial indictment charged Mr. Raniere with three predicate racketeering acts: two acts of Sexual Exploitation of a Child (Acts 2 and 3) and one act of Possession of Child Pornography (Act 4) (hereafter "the predicate acts"). The elements for each act were set forth in the jury instructions.

### Acts 2 and 3 – Sexual Exploitation of a Child

The trial indictment alleged:

- Act 2: "On or about November 2, 2005 … the defendant … did knowingly and intentionally employ, use, persuade, induce, entice and coerce a minor … Camila, to engage in sexually explicit conduct for the purpose of producing one or more visual depictions of such conduct." (DE:728 at 60).

- Act 3: Alleged the same conduct as in Act 2 "[o]n or about November 24, 2025." (*Id.* at 65).

To convict, the jury had to find these elements beyond a reasonable doubt:

1. "[T]hat Camila was under the age of 18 at the time of the acts alleged in the indictment;"

2. "[T]hat the Defendant used, employed, persuaded, induced, or enticed Camila to take part in sexually explicit conduct for the purpose of producing … a visual depiction of that conduct;" and

3. "[T]he visual depiction was …produced using materials that had been mailed, shipped, or transported in and affecting interstate and foreign commerce."
(*Id.* at 60-61).

### Act 4 – Possession of Child Pornography

The trial indictment alleged:

"In or about and between November 2005 and March 2018… the defendant … RANIERE did knowingly and intentionally possess matter containing one

10

or more visual depictions … stored on a **Western Digital hard drive**." (*Id.* at 66) (emphasis added).

The required elements were:

1. "[T]hat the Defendant knowingly possessed a visual depiction;

2. "[T]hat the visual depiction …was produced using materials that had been transported in interstate or foreign commerce;"

3. "[T]hat the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrays that minor engaged in that conduct; and"

4. "[T]hat the Defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct."
(*Id.* at 66-67)

### B. Analysis

This Court's prior determination that there was "sufficient evidence to conclude beyond a reasonable doubt that Raniere was guilty of exploiting Camila" does not apply here. *Raniere*, 2022 WL 17544087, at *3. (GBr. at 22). The direct appeal did not raise digital evidence falsification and as such, it was not previously ruled upon by this Court.

If this Court accepts the 7 experts' conclusion that the hard drive and memory card were falsified, or if proven at an evidentiary hearing, the government's case collapses—these devices were its only evidence for these predicate acts.

The government relied on the hard drive's photos and metadata timestamps to prove a "visual depiction" of an underage subject (Elements 1 & 2 of exploitation; Elements 1 & 3 of possession). Without the hard drive, these elements fail.

To prove production (Exploitation Element 2) and knowing possession (Possession Elements 1 & 4), the government had to link the photos to Raniere. It relied on the hard drive's "Studies" folder, which contained photos of adult women he was allegedly in a relationship with, and the camera which they alleged he used to take the purported illicit photos. They linked him to the camera through two witnesses who testified that he photographed them **as adults**, though they did not identify the camera; photos of both women were also in the "Studies" folder. (T:5368-5373). Without the hard drive and camera, these elements fail.

Finally, interstate commerce (Element 3 of exploitation; Element 2 of possession) was based solely on the camera's alleged Japanese manufacture (T:5372-73). If the memory card is falsified, the entire item (1B15) must be excluded.

Without both devices, the predicate acts fail as a matter of law.

Crucially, the government treated the camera and memory card as a single evidentiary item (1B15). **If the memory card is accepted as falsified, the entire item—including the camera—must be excluded.**

12

## II.   JUDICIAL ESTOPPEL BARS THE GOVT. FROM DOWNPLAYING THESE ACTS AFTER ARGUING THEY WERE CENTRAL TO RICO

### A. Legal Standard

The Second Circuit holds that judicial estoppel applies in criminal cases, preventing a party from taking a contradictory position simply because its interests have changed. *United States v. Swartz Fam. Trust*, 67 F.4th 505, 519 (2d Cir. 2023). The doctrine applies when:

1. A party's new position contradicts its earlier stance;

2. The court relied on the prior position in earlier proceedings; and

3. The party would gain an unfair advantage by reversing its position.

*Id.* at 519.

Judicial estoppel applies across different stages of a single criminal proceeding. *United States v. Ugbomah*, 2023 U.S. Dist. LEXIS 17859* (E.D.N.Y. Feb. 2, 2023).

### B. Analysis

The government's shifting position on the predicate acts meets all three elements of judicial estoppel.

### (1) The government's new position contradicts its prior stance.

At a March 18, 2019 pre-trial hearing, opposing severance and dismissal,

13

the government stated, "The child pornography [including the exploitation acts] is also at the heart of our racketeering conspiracy." (A217:14-16).

On March 29, 2019, the government opposed severance of these charges from both Raniere's trial and his co-defendants' (DE:485), reinforcing their centrality. At an April 4, 2019 status conference, the government again emphasized their importance, stating:

> "[T]he alleged victim of the child pornography charges goes throughout this case… there's very little evidence in this case that does not relate to that victim." (A244).

Now, in this appeal, the government abandons its prior stance, stating: "Raniere's claim fails for the additional (and obvious) reason that the child pornography and child exploitation offenses constituted only three of the 11 predicate acts." (GBr. at 44).

**(2) The district court relied on the government's prior position in denying severance,** accepting the government's assertion that these acts were central to RICO.

**(3) Allowing this reversal gives the government an unfair advantage** by enabling it to downplay these acts *post hoc* to preserve the conviction. This Court should reject the government's attempt to reverse course and disavow the significance of these acts and the underlying evidence.

### III. THE CHILD PORNOGRAPHY EVIDENCE TAINTED THE ENTIRE TRIAL BEYOND REPAIR

#### A. Legal Standard

In *Andrew v. White*, the Supreme Court held that the erroneous admission of highly inflammatory evidence can render a trial fundamentally unfair, violating the Due Process Clause of the Fourteenth Amendment. The Court reaffirmed <u>*Payne v. Tennessee,*</u> that once prejudicial evidence taints a trial, due process demands relief. *Andrew v. White*, 220 L.Ed. 2d 340, 342 (2025) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).

"The Second Circuit has repeatedly recognized the inflammatory quality and impact of evidence of a pornographic nature." *United States v. Nosov*, 221 F. Supp. 2d 445, 450 (S.D.N.Y. Sept. 17, 2002) *citing to United States v. Borello*, 766 F.2d 46 (2d Cir. 1985); *United States v. Harvey*, 991 F.2d 981 (2d Cir. 1993).

As opined by Judge Sack, concurring in *United States v. Brown*, cases involving child pornography evoke strong emotional, moral, and cultural reactions from judges and jurors. These reactions are often based on deeply held beliefs and values, making it challenging to maintain objectivity. The visceral reaction generated by such cases can lead to a heightened risk of prejudicial impact. *United States v. Brown*, 843 F.3d 74, 84 (2d Cir. 2016).

#### B. Analysis

15

If the hard drive and/or camera's memory card are accepted as falsified, it is untenable to argue that their admission did not taint the proceedings beyond repair, due to its uniquely inflammatory nature. *See Nosov, 221 F. Supp. 2d at 450*; *Harvey,* 991 F.2d at 981; *Brown,* 843 F.3d at 84. Under *Andrew,* 220 L.Ed. 2d at 342, prejudicial material of this nature cannot simply be deemed harmless *post hoc* – its admission rendered the trial fundamentally unfair, warranting reversal.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN RELYING ON THE LOVEALL REPORT AND CAMILA DECLARATION TO IMPROPERLY REJECT MR. RANIERE'S CLAIMS OF EVIDENCE FALSIFICATION

### A. **Legal Standard**

In the Second Circuit, post-trial affidavits submitted by the government "may be considered in assessing the **sufficiency of a petitioner's claims** in post-conviction proceedings." *Dalli v. United States*, F.2d 758, 762 n.4 (2d Cir. 1974). However, such material may "**not [be considered] as a basis for finding a petitioner's allegations to be false.**" *United States v. Franzese,* 525 F.2d 27, 30-31 (2d Cir. 1975), quoting *United States v. Salerno,* 290 F.2d 105, 106 (2d Cir. 1961)*.* (emphasis added).

### B. **Analysis**

In denying the Rule 33, the District Court found:

> "[T]he Loveall Declaration 'offers a far more plausible and convincing explanation … than the reports submitted by the

16

Defendant, especially when considered alongside … the victim's [Camila's] affidavit." (SPA29)

Notably, Camila and Loveall did not testify at trial.

The government cites *United States v. Franzese* for the proposition that post-conviction affidavits "may be considered in assessing the **sufficiency** of a petitioner's claims in post-conviction proceedings." (GBr. at 54). However, the District Court impermissibly went beyond this, relying on the Loveall Report and Camila's Declaration[4] not just to assess sufficiency, but to outright reject Mr. Raniere's claims**.** This directly contradicts *Franzese*, which holds that post-trial affidavits "may not [be considered] as a basis for finding a petitioner's allegations to be false."

The District Court's improper reliance on these declarations as affirmative proof against Raniere's claims was legally erroneous and an abuse of discretion, warranting reversal.

The government's defense of this error further relies on a misreading of *United States v. Boyd*, 131 F.3d 951, 954 (11th Cir. 1997) (GBr. at 54). It claims *Boyd* holds that "the Confrontation Clause does not apply to hearings on new trial motions." However, *Boyd* only addressed whether a defendant's absence from a post-trial hearing involving "**trial witnesses**" violated his rights. *Id.* at 954.

---

[4] The government cites Camila's unsworn claim she was "intentionally prevented" from testifying, but her attorney's email contradicts this. (GBr. at 20, n.9; RBr. at 26, n.11)

(emphasis added). **Here, Loveall and Camila were *never* trial witnesses.** Yet, the district court credited their declarations for the truth of the matter asserted, which appears to be an unprecedented use of post-trial declarations to sustain a conviction, demanding heightened scrutiny from this Court.

## V. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE RULE 33

### A. Legal Standard

Under *Brady*, "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Coppa (In re United States)*, 267 F.3d 132, 139 (2d Cir. 2011). This affirmative duty to disclose encompasses both exculpatory evidence and impeachment evidence. *Id*. at 135.

To obtain a new trial based on a *Brady* violation, "a defendant must show that (1) the Government, either willfully or inadvertently suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140. (GBr. at 39).

The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation. *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995). The prosecutor's good faith or lack of bad faith is irrelevant to the duty to disclose. The focus is on whether the suppression of

evidence amounts to a due process violation. See *Kyles*, 514 U.S. at 432; *Payne*, 63 F.3d at 1208.

A Brady violation occurs "where the government suppresses evidence that could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict." *United States v. Cacace*, 796 F.3d 176, 183-184 (2d Cir. 2015) (internal citations removed), quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

<u>Materiality</u>

The Court must independently determine whether suppressed evidence is material, though the trial judge's assessment of nondisclosure is entitled to great weight. *United States v. Rowland*, 826 F.3d 100, 112; *Payne*, 63 F.3d at 1209.

A *Brady* violation is established where the suppressed evidence's likely impact on the witness's credibility "would have undermined a critical element of the prosecution's case." *United States v. Badalamente*, 507 F.2d 12, 17-18 (2d Cir. 1974); See also *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996)

Impeachment evidence is material when the witness in question "supplied the only evidence linking the defendant(s) to the crime." *United States v. Petrillo*, 821 F.2d 85, 90 (2d Cir. 1987).

<u>Suppression</u>

Evidence is not "suppressed," however, "if a defendant either knew, or should have known, of the essential facts permitting him to take advantage" of the evidence. *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993). However, due process prohibits forcing a defendant to "scavenge for hints of undisclosed Brady material" when the government conceals exculpatory evidence. *Banks v. Dretke*, 540 U.S. 668, 694-696 (2004).

### B. Analysis

**(1) The District Court's Failure to Identify Suppressed Evidence and Assess Materiality Requires Remand, If Not Reversal**

In denying the Rule 33 motion, the district court failed to identify the key *Brady* evidence at issue – the second forensic copy and the FBI photo tech operation – and thus did not make an "assessment of the effect of nondisclosure." *Rowland*, 826 F.3d at 112. If this Court does not grant relief outright, it should at minimum remand for an evidentiary hearing.

**(2) The Govt. Suppressed the Second Copy of the Camera's Memory Card**

The government claims, "As Kiper's own report indicates, the fact that Booth relied on a second forensic copy of the camera card is evident from the face of his report," pointing to the evidence path. (GBr. at 40). That is untrue. Nowhere does Dr. Kiper claim or indicate this was evident and the opposition is the first time the government explicitly acknowledged its existence. (Fact #1).

20

Booth's testimony disproves the government's claim. He testified, "[t]he evidence path is the path I created to **save** the evidence file." (T:4857) (emphasis added). He said FBI policy allows only one forensic copy, which he referred to as "**[t]he** file," and he never disclosed making a second. Thus, his statement about the evidence path implied he was merely saving Flatley's copy. (T:4783) (emphasis added).

The prosecution only elicited testimony from Booth that he "created a report instead of Flatley," and did not elicit any testimony about the second copy or his creation of it. (T:4986-87). It further misled the Court by representing, "He [Booth] never said I was the one who imaged the devices."[5] (T:4893). Whether these actions were "willful or inadvertent" is irrelevant. *Coppa*, 267 F.3d at 139.

In light of the existence of the second forensic copy, it is clear that Booth deliberately concealed it, falsely portraying in his CART notes that his actions were authorized:

> "[I]n lieu of … Flatley's availability as he would be overseas during trial … SSA Trenton Schmatz ... authorized [Booth] to process the item [1B15]." (A930).

---

[5] The government asserts that "Raniere's claim … that the government represented to the district court that Booth had not created a second forensic image is not accurate." (GBr. at 19, n.8). To refute this, the government cites testimony from Booth about Donnelly "physically" handling the evidence – but that testimony solely concerned the hard drive, not the memory card. (T:4786-87).

Dr. Kiper opined, "It is not credible that FE Booth did not know his actions violated FBI policy." (A1039). This applies equally to his supervisor Schmatz. Booth and Schmatz knew FBI policy prohibited a second copy and that Schmatz lacked authority to approve it, yet they added this note to make it look authorized, hiding the second copy.

Due process prohibits forcing the defense to "scavenge" for materials that the government's FBI CART members have deliberately concealed. *Banks*, 540 U.S.at 694-696.

### (3) The Govt. Suppressed the Secret FBI Photo Tech Operation & the Prior Unknown Actor

The government argues Raniere "was… aware at the time of trial that law enforcement agents had accessed the camera's memory card without a … write blocker."[6] (GBr. at 45). It concludes there is no *Brady* violation because Raniere knew the "essential facts permitting him to take advantage" of the evidence. (*Id.* at 46).

However, Raniere lacked the essential facts. At trial, his counsel knew a single individual accessed the memory card, but not that multiple "law

---

[6] The government claims Raniere "declined to question" the agent who testified after Booth, SA Weniger – but he had no involvement with the memory card. (GBr. at 45).

enforcement agents" directed an unidentified, unauthorized FBI photo technician to do so – a technician who was deliberately kept off the chain of custody. (RBr. at 19, 44-45; A1773 ¶¶ 10-11). This knowingly violated DEPG Section § 3.3.9.1.1.2.

This secret operation, revealed only four years post-trial, targeted one of 70 seized devices **before it was preserved**: the camera, with its memory card. Due process does not permit agents to hide improper operations while the defendant must uncover them. See *Banks*, 540 U.S. at 694-696.

This suppression was compounded – whether "willfully or inadvertently" – by prosecutors repeatedly and falsely stating to the Court that all devices had been sent to CART months earlier, by Booth falsely testifying that the chain of custody was complete, and Mills falsely testifying that the camera was handled only through CART. *Coppa*, 267 F.3d at 140.

Similarly, the involvement of the unknown, unauthorized actor was suppressed, only revealed 5.5 years post-trial.

### (4) The Govt. Suppressed Evidence of Its Own Complicity in Falsification

The government does not dispute that accepting or proving the 7 experts' findings of government complicity in falsifying or concealing evidence would constitute a *Brady* violation (RBr. at 47-48). It only argues they are not "newly discovered evidence" (GBr. at 47-48), citing cases that do not involve government complicity in falsification or concealment (*Id.* at 48).

If this Court rules that such fraudulently concealed misconduct should have been uncovered through the exercise of due diligence, it would set an untenable precedent – holding the government to a lower standard than civil litigants. *See e.g. Robertson v. Seidman & Seidman*, 609 F.2d 583, 593 (2d Cir. 1979).

**(5) The Govt. Suppressed that the "Accidental Discovery" was Staged**

The government represents that its conduct throughout the case, including the discovery of the alleged illicit photos, was proper (GBr. at 6-9, 41, 49-50). As raised in Mr. Raniere's Rule 33 reply, in HBO's *The Vow*, three years post-trial, former AUSA Moira Penza contradicted the government's "accidental discovery" narrative:

> "Once we knew about the picture-taking, the picture-keeping, it was a matter of finding this [the alleged illicit photos of Camila], and when we did—I mean—that is game-changing evidence." (A1817)

The government suppressed the evidence of this critical false premise, which it used to justify new charges.

**(6) The Suppressed Evidence is Material under *Brady***

<u>Second Forensic Copy</u>

The 7 experts' Findings 8-11 demonstrate that the second forensic copy contains dozens of falsified and planted files; these findings were uncontested by the government despite the opportunity to rebut.[7] (RBr. at 34)

Booth's forensic analysis of the hard drive, camera, and memory card formed the basis for the predicate acts. He was the only witness who testified to the photos' 2005 timestamps, which made the photos appear to depict a 15-year-old. He also linked the photos to the camera through metadata.

Booth's misconduct in creating a second forensic copy directly impeaches this critical testimony. The Second Circuit recognizes that where an expert's testimony "supplied the only evidence linking the defendant to the crime," impeachment is material to guilt. *Petrillo*, 821 F.2d at 90. Without Booth's testimony, there is "no direct evidence of [Raniere's] guilt", as he was the only witness establishing the 2005 timeframe and the photos' connection to the camera *McCrory v. Alabama*, 144 S. Ct. 2483, 2488 (2024) (holding the lack of any direct evidence of a defendant's guilt aside from discredited expert testimony rendered a trial fundamentally unfair).

---

[7] Excluding or suppressing the hard drive or camera's memory card nullifies the predicate acts, requiring reversal of the RICO convictions and potentially others (see Sections I-III, *supra*).

Because "[t]he reliability of [Booth] may well be determinative of guilt or innocence," his concealed misconduct falls squarely within *Brady*. *Wong*, 78 F.3d at 79.

The government never validly disputed that 37 files were planted while in its custody, nor proved that the first and second copies of the memory card are identical (Facts #8, 25). If the planting is accepted or proven, this is "'egregious and deliberate' misconduct" warranting dismissal via *Mangano*. (RBr. at 48).

The planting in FBI custody also constitutes a constructive amendment to the indictment, as the version of 1B15 (the camera and memory card) presented to the grand jury materially differed from the version presented to the petit jury through Booth's testimony. A constructive amendment is a fatal error requiring automatic reversal. *See Stirone v. United States*, 361 U.S. 212, 217-19 (1960). Notably, the predicate acts altogether led to enhanced sentencing guidelines. (DE:966).

Secret Pre-CART FBI Photo Tech Operation & Unknown Actors' Access

The government referenced the search photos it produced. (GBr. at 7). With no search photos depicting the camera – only a camera bag – and the alleged photo of the hard drive (Item 2) depicting a different device than what was analyzed by

CART[8], Mills' testimony is the only evidence linking these devices to 8 Hale (GBr. at 6-7).

However, Mills' testimony is impeached by newly disclosed evidence: the FBI photo tech operation and prior unauthorized access contradict his false claim that the camera was properly handled, only through CART. The camera's unpreserved memory card was accessed before a forensic image was made; this is prohibited by FBI protocol. (Facts #14, 17) Without Mills, there is no independent proof these devices were seized from 8 Hale, which would leave them without a chain of custody or connection to Mr. Raniere.

This newly disclosed evidence also shows FBI agents knew they were wrongly accessing **unpreserved evidence** and deliberately concealed it prior to altering the evidence, showing "bad faith" warranting dismissal under *Mangano*. (RBr. at 45).

Post-Trial Admission on HBO *The Vow*

Former AUSA Penza's statement on HBO exposes the "accidental discovery" narrative as false and not plain view, contrary to what the government argued pre-trial. If accepted, the devices would need to be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 486 (1963).

---

[8] See *infra* at 30, n.10 for the support for these findings.

Each piece of suppressed *Brady* evidence individually and cumulatively "undermines confidence in the verdict." *Kyles*, 514 U.S. at 434.

### (7) The Evidence Also Warrants Relief Under Rule 33 as "Newly Discovered"

For the reasons detailed above, the aforementioned pieces of evidence also satisfy the non-*Brady* Rule 33 standard for "newly discovered evidence," as they were "newly discovered after trial," could not have been obtained earlier with due diligence, are "material," "not merely cumulative or impeaching," and "would likely result in an acquittal." *United States v. Forbes*, 790 F.3d 403, 406-07 (2d Cir. 2015).

Moreover, a conviction obtained through the use of false evidence violates due process. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also* Drake v. Portuondo, 553 F.3d 230, 240 (2d Cir. 2009).

## VI. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING POST-CONVICTION MOTION-TO-COMPEL

The government claims Mr. Raniere "does not meaningfully address" the district court's denial of his motion to compel and that the evidence was "available … before and during trial." (GBr. at 59). This is false. As Mr. Raniere explained, "The Court fundamentally misconstrues the issue. The defense's argument is not about the memory card itself, but the data extracted from it– specifically, the second forensic image [copy]," which is *Brady* material. (RBr. at 41).

Further, the government contradicts itself, verifying Loveall's assessment "has no bearing on Raniere's innocence." (GBr. at 59), while relying solely on it to contest evidence fabrication claims central to guilt, punishment, and due process. The government falsely claims Raniere registered only "subjective disagreement" with the court's crediting of Loveall (GBr. at 60). However, the defense cited objective facts: Loveall received the second copy, the defense did not; and the 7 experts' report identifying "significant defects" in Loveall's process, such as a complete lack of proof (A1673, A1694). The government does not address Mr. Raniere's due process argument about secret evidence (RBr. at 28-30).

## VII. SYSTEMATIC GOVT. MALFEASANCE CAUSED STRUCTURAL ERROR REQUIRING REVERSAL OF MR. RANIERE'S CONVICTIONS

### A. Applicable Law

**Before assessing harmless error, the Court must determine whether structural error occurred**. Structural errors require automatic reversal because they corrupt the trial framework itself. *Ariz. v. Fulminante*, 499 U.S. 279, 309-310 (1991).

### B. Analysis

As detailed in this brief, the newly discovered evidence exposes systemic government malfeasance throughout this case, spanning multiple FBI divisions and

personnel, including non-testifying field agents, CART personnel, and testifying

FBI agents.

- The "accidental discovery" was fraudulently staged and used to circumvent search warrant limits

- The evidence "at the heart" of the government's racketeering case (the hard drive and memory card) was falsified.

- Government actors directed a prohibited, covert, off-the-books mishandling of the camera and its memory card.

- CART personnel knowingly and secretly created and used a prohibited second forensic copy.

- FBI personnel gave knowingly false testimony.[9]

- Post-trial, the government has made numerous false representations that render its asserts presumptively unreliable.

- Contrary to the government's representation that the 8 Hale search was proper (GBr. at 6-7), former FBI experts found scenes were falsified, items planted, and multiple other improper acts were committed.[10]

This Court should find structural error or, at minimum, remand to the

District Court for an evidentiary hearing to develop the record.

---

[9]The government falsely claims there was "nothing inaccurate, let alone perjurious" about Mills' testimony (GBr. at 49). Mills stated the FBI only used CART to review the camera, but it was accessed multiple times pre-CART, **before any forensic image was made**. On Booth, the government does not refute the perjury claim about unsealed evidence. As for EXIF metadata, Booth's conceding it can be altered does not negate his repeated false claims that it is "very hard to remove," "not easily modifiable," and "purposely designed that way." (T:4819-20, T:4380). In its summation, the prosecution reinforced this, EXIF data is "extremely reliable" to support the 2005 dates. (T:5371, T:5571).

[10] This evidence is not "newly discovered." The experts' reports were filed in the district court, *US v. Raniere,* 18-cr-204, DE:1273.

## VIII. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING AN EVIDENTIARY HEARING ON THE RULE 33

**Applicable Law**

As the government cites, "[A] district court may decide the motion without a ... hearing unless the defendant shows disputed issues of definite, specific, and nonconjectural material fact." *Gershman*, 31 F.4th at 93.

**Analysis**

The specific, material factual disputes below, among others, demonstrate the need for an evidentiary hearing:

- Whether the first and second copies of the memory card are identical; access to the forensic copies is necessary to resolve this dispute.

- Whether creating the second copy violated FBI protocol.

- Number and dates of alleged illicit photos.[11]

- Whether Loveall or the 7 experts are correct about the disputed findings of falsification.

- The nature, scope, and identities of the personnel involved in the unauthorized FBI photo tech operation that altered the camera's **unpreserved** memory card.

- Whether the alleged accidental discovery of child pornography was intentional.

---

[11] In her declaration, Camila claims **there was only 1 photo session** in 2005, "no more than 2-3 months after September 18, 2005," **not 2 photo sessions**, contradicting her victim impact statement. DE:1213-1 at ¶ 8; DE:1002 at 21.

## IX.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING RECUSAL

### A. Applicable Law

Reassignment on remand is warranted where: (1) the original judge would have difficulty disregarding prior erroneous findings, (2) reassignment is necessary to preserve the appearance of justice, and (3) the benefits of fairness outweigh concerns about judicial economy. *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977); *United States v. Johnson*, 850 F.3d 515, 525 (2d Cir. 2017); *United States v. Awadallah*, 436 F.3d 125, 135 (2d Cir. 2006); *United States v. Hernandez*, 604 F.3d 48, 55 (2d Cir. 2010).

### B. Analysis

Judge Garaufis' bias, demonstrated through his statements and actions, precludes him from impartially adjudicating the Rule 33 motion, where he must determine whether the verdict was tainted by falsified evidence and government misconduct.

At sentencing, after Camila's victim impact statement, he stated, "It would have taken the jury ten minutes to convict him… she is totally believable… she was groomed from age 13 to 15." (GBr. at 21). This credits an inflammatory claim never alleged or proven at trial by a key witness who never testified. His recusal ruling concedes his "distaste" for Raniere but dismisses it as an "honestly held

32

viewpoint" based on trial evidence (SPA6-8). However, bias formed during trial is no less disqualifying when reviewing its fairness.

In response to Mr. Raniere's restitution counsel's request for a one-hour adjournment to attend the shiva of his mentor, who had just died of pancreatic cancer, Judge Garaufis mocked him and engaged in a half-hour silent staring contest with him. (RBr. at 60-62). His level of vitriol surrounding the matter indicates that he would have difficulty disregarding prior erroneous findings.

Even if he believes he can be impartial, the appearance of justice is compromised. *Robin* requires reassignment when a judge's statements create a reasonable suspicion of partiality. Judicial economy cannot justify allowing a biased judge to rule on trial fairness. Recusal is required.

## Rebuttals to the Govt.'s Assertions in Opposition to Raniere's Recusal Motion

- The Court is being asked to make a determination of the facts surrounding the termination of Lauren Salzman's cross-examination distinct from the Sixth Amendment claim in the direct appeal. (GBr. at 65).

- The government falsely claims Raniere never alleged prejudice from the judge's failure to recuse, but his district court filing argued recusal was necessary to uphold due process for the Rule 33. (GBr. at 67, A1163).

- The government argues *Liteky* does not hinge on "upon completion of the evidence." (GBr. at 64); yet in this instance, the judge's "This is not DOS"

during trial was a prejudgment of guilt. (RBr. at 59). By definition, an impartial judge may only form and act on an opinion of guilt after the completion of the evidence and jury's verdict.

## CONCLUSION

For the foregoing reasons, Mr. Raniere respectfully requests that this Court:(1) reverse the denial of the Rule 33 motion and grant a new trial or, alternatively, remand for an evidentiary hearing[12]; (2) reverse the denial of the motions to compel and order the production of the second forensic copy of the camera's memory card and all requested information related to the FBI photo tech operation; and (3) reverse the denial of the motion for recusal. Additionally, pursuant to Fed. R. Evid. 201(c)(2), Mr. Raniere requests judicial notice of Facts #14–28 from Statement of Facts, as they meet the criteria under Fed. R. Evid. 201(b), as they are "capable of accurate and ready determination."

Dated:  New York, New York
       March 7, 2025

                        Respectfully submitted,
                        \s\ Deborah J. Blum
       By:   Deborah J. Blum
                DEBORAH J. BLUM, ESQ.
                Attorney for Defendant-Appellant
                225 Broadway, Suite 715
                New York, New York 10007
                646-535-2586

---

[12] Given the government's disclosure of new evidence Raniere intends to move under Fed. R. App. P. 12.1(b) for limited remand to seek disclosure.

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.


Dated:   New York, New York
             March 7, 2025

                              Respectfully submitted,

                              \s\ Deborah J. Blum
                       By:   Deborah J. Blum
                              DEBORAH J. BLUM, ESQ.
                              Attorney for Defendant-Appellant
                              225 Broadway, Suite 715
                              New York, New York 10007
                              646-535-2586